**Walter LESKOSKY**

v.

**David MATHEWS, as Secretary of Health, Education and Welfare.**

**Civ. A. No. 75–3371.**

United States District Court, E. D. Pennsylvania.

June 25, 1976.

---

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

Jeffrey H. Simcox, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is a suit to review the final decision of the Secretary of Health, Education and Welfare denying Walter Leskosky's claim for black lung benefits, pursuant to section 411(a) and 412(a)(1) of the Federal Coal Mine Health and Safety Act of 1969, (hereinafter, Act) 30 U.S.C.A. §§ 921(a) and 922(a)(1). Presently before the Court are cross-motions for summary judgment. The central issue is whether there is substantial evidence to support the administrative determination. For the reasons hereinafter set forth, judgment shall be entered for the defendant.

On June 26, 1973, plaintiff filed an application for benefits with the Bureau of Disability Insurance of the Social Security Administration. The Act provides for temporary administration of the black lung program by the Secretary of HEW, followed by its permanent administration by the Secretary of Labor. Specifically, the Social Security Administration has jurisdiction with respect to the application of living miners filed[1] on or before June 30, 1973.

---

1. Ordinarily, a filing is effective only if the claimant meets the requirements for the entitlement to benefits at the time of filing. An exception to this rule is set forth in 20 C.F.R. 410.226(b), which provides, inter alia:

"If the claimant first meets the requirements for entitlement to benefits in a month after the month of actual filing but before a final administrative or judicial decision is rendered on his claim, his claim will be deemed to have been effectively filed in such first month of entitlement." In this case, the finding of the Administrative Law Judge supported by substantial evidence, was that plaintiff was totally disabled, if at all, no earlier than January, 1974. Therefore, the

After a hearing (held on June 1, 1975) the Administrative Law Judge issued a decision (on June 19, 1975) denying plaintiff's claim. The crux of the decision was the finding that Mr. Leskosky was engaged in gainful work comparable to mining through June 30, 1973 (and as late as January 1974). Although the Administrative Law Judge implied that the plaintiff had a potentially meritorious claim under the Act for the period after January 1974, he held that the determination of that claim was within the jurisdiction of the Secretary of Labor.[2]

The Administrative Law Judge found that medical evidence did not establish that the plaintiff had pneumoconiosis, but it did establish that he had a chronic respiratory or pulmonary impairment. On this basis, the claimant could be eligible for benefits if he was totally disabled by that impairment on or before June 30, 1973. Mr. Leskosky testified that he was 57 years old and had worked as a coal miner for 22 years. He left mining in 1964, when the job he then held was eliminated by a shut down. He then worked at a steel plant for about four and a half years. From 1969 to January 1974, he was employed by Fiberite Corporation. The Administrative Law Judge found that the work he performed at that job was comparable to mining, within the meaning of the Act. The conclusion followed, that Mr. Leskosky was not totally disabled prior to January, 1974.

■ The plaintiff asserts several grounds for reversal of the Secretary's decision. First, he contends that there was not substantial evidence in the record to support the Administrative Law Judge's finding that the plaintiff's activities at Fiberite were comparable to mining work. Pursuant to 20 C.F.R. § 410.412, a miner shall be considered totally disabled due to pneumoconiosis (which can be established by any of the standards in 20 C.F.R. § 410.414), if his impairment

> "prevents him from engaging in gainful work . . . requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time."

There can be no question but that the work at Fiberite was gainful. His earnings there exceeded his wages as a miner. His annual earnings in the mines in 1961–1963 averaged $3675.[3] His annual earnings at Fiberite in 1971–1973 averaged $5446. (Tr. 70–71) Whether the latter employment drew upon similar "skills and abilities" as the mining work is a question on which reasonable persons could disagree. The Administrative Law Judge's decision, however, was supported by substantial evidence in the record. The decision noted:

> "[At Fiberite] he mixed and shovelled material for the making of plastic pellets, loaded them into barrels weighing up to 200 lbs., and moved them by rolling . . . He did lots of lifting and carrying of bags weighing up to 50 lbs. for distances up to 10 feet. He worked 8 hours per day on a 5 day a week basis, but did some overtime work during 1973." Tr. 6–7.

This is an accurate summary of the claimant's testimony. Tr. 32–38. Plaintiff says that his work at Fiberite was not comparable in "skills" because the factory operation there was mostly automated; he rarely used hand tools (sledgehammers, bars, wrenches, picks, and saws) as he had in the mines. These distinctions do not render the administrative decision incorrect as a matter of law. In both instances, the plaintiff performed relatively uncomplicated manual labor at similar rates of pay. The factory labor was less arduous than some mine work, but at least as physically demanding as other mining jobs, including ones the

claim cannot relate back to any date earlier than the June 30, 1973, jurisdictional cut-off.

2. "The claimant, however, may and should file an [sic] new application for black lung benefits with the Department of Labor to obtain a determination on the question of entitlement to black lung benefits after January, 1974, the date on which he last engaged in gainful employment." (R. 10)

3. In 1965–1967 his annual earnings at Bethlehem Steel Corporation averaged $4950.

plaintiff held during his many years of mining. (Tr. 9–12).

■ Second, plaintiff contends that the Administrative Law Judge erred in declining to find that plaintiff was totally disabled due to pneumoconiosis under 20 C.F.R. § 410.414(c). Under that section, the factfinder considers all evidence relevant to the "existence of a totally disabling chronic respiratory or pulmonary impairment." The Administrative Law Judge reviewed the X-ray reports; the pulmonary function studies; the report of a treating physician, Dr. Dzurek; and the testimony of the claimant and his wife. He found that Mr. Leskosky was suffering from a chronic respiratory impairment, but he determined that § 410.414(c) was inapplicable because the impairment was not "totally disabling" as of June 30, 1973, when plaintiff was working at Fiberite. As discussed above, the finding that plaintiff was not totally disabled on or about June 30, 1973, is based on substantial evidence. With that premise, the Administrative Law Judge had to deny the claim under § 410.414(c).

■ Third, the plaintiff asserts that he was entitled to an irrebuttable presumption of total disability due to pneumoconiosis on the basis of X-rays and pulmonary function studies. However, the Administrative Law Judge was acting within his discretion when he considered the X-ray rereadings, and then resolved contradictory X-ray evidence against the plaintiff. Also, readings in the pulmonary function studies did not show the values required by the regulations in order to create an irrebuttable presumption of totally disabling pneumoconiosis.

■ Mr. Leskosky filed his application for black lung benefits when he had a substantial respiratory impairment, but one which had not become so advanced as to

4. Actually, after July 26, 1973, because of the relation-back regulation discussed in note 1, supra.

5. 20 C.F.R. 410, 490 does take note of the Congressional intent that the Secretary of HEW adopt interim rules to speed up the evaluation of the backlog of black lung claims. However, we have been shown no regulation

keep him from gainful employment. The weight of the evidence at the hearing appears to show that Mr. Leskosky became totally disabled at some time between January 1974, and the hearing date (June 1, 1974). The transfer of the black lung program from the Secretary of HEW to the Secretary of Labor, deprived the Administrative Law Judge of the authority to grant a claim based on a disability that commenced after June 30, 1973.[4] It is unfortunate that the adjudication of Mr. Leskosky's potentially meritorious claim for a later period requires duplicative proceedings before the Labor Department, but the Act appears to leave no alternative.[5]

that would allow the Secretary of HEW to award benefits for a disability that became total after June 30, 1973. It is questionable that the Act could authorize such a regulation. A claim that has accrued after June 30, 1973, can hardly be considered part of the "backlog" which existed when the 1972 Amendments were passed.